UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                                                                  CRIMINAL MATTER NO. 3:15cr75-DPJ-LRA

JEFFREY C. RANDALL

ORDER

This tax-fraud matter is before the Court on Defendant Jeffrey C. Randall's Motion to Dismiss or, Alternatively, in Limine to Exclude Evidence and Testimony [34]. Because he fails to show both the Government's control over specific evidence and bad faith, the motion is denied.

I.      Background

The Court previously set forth the events leading up to this point. As such, the facts described in the Orders denying Randall's request for interrogatories [42] and an evidentiary hearing [48] are fully incorporated herein. But the Court does offer the following brief summary.

Randall was indicted on September 1, 2015, for two counts of income-tax fraud and one count of conspiring to defraud the United States. Indictment [1] ¶¶ 6(F), 7, 8. On April 18, 2016, Randall moved to dismiss the indictment, or in the alternative, exclude testimony by IRS agents and his now convicted tax preparer Lynn Allen Floyd [34]. He styled these requests as spoliation sanctions, contending that the IRS failed to obtain and/or preserve evidence related to the tax returns at issue. Randall timely filed his Memorandum of Authorities [51] in support of his motion on December 29, 2016; the Government responded [52], and Randall replied [54]. The Court, being fully advised in the premises, is prepared to rule.

II.     Analysis

"A party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant . . . or should have known that the evidence may be relevant." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). The "destruction or the significant and meaningful alteration of such evidence" is termed "spoliation." *Id.* (quoting *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010)); *see generally Rimkus*, 688 F. Supp. 2d at 607 (Rosenthal, J) (setting out the analytical issues of spoliation sanctions); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 468 (S.D.N.Y. 2010), *abrogated on other grounds by Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135 (2d Cir. 2012). Here, Randall moves the Court to sanction the Government for alleged spoliation by either dismissing the indictment or excluding certain evidence and testimony from trial.[1]

The Fifth Circuit has examined the issue in a handful of criminal cases. Most notably, *United States v. Wise* holds that a showing of bad faith is required to establish spoliation. 221 F.3d 140, 156 (5th Cir. 2000); *see also United States v. Valas*, 822 F.3d 228, 239 (5th Cir. 2016) (holding that spoliation requires proof of "bad faith or bad conduct by the other party"). Among the cases *Wise* cites, *Eaton Corp. v. Appliance Valves Corp.* recognized two elements for a spoliation claim—destruction of evidence and bad faith. 790 F.2d 874, 878 (Fed. Cir. 1986), *cited in Wise*, 221 F.3d at 156. Of course, destruction of evidence assumes that the evidence "existed and w[as] within the control of the opposing party." *Jobe v. ATR Mktg., Inc.*, No. 98-31366, 1999 WL 511380, at *6 n.3 (5th Cir. June 23, 1999).

---

[1] As before, the Court assumes without deciding that a spoliation claim against the Government may be premised on the actions of the IRS, even though it is not a party. *See Stocker v. United States*, 705 F.3d 225, 235 (6th Cir. 2013). The parties have not addressed this issue in their briefings.

2

These standards have been consistently applied in this circuit, but not in the context of a motion to dismiss.  Instead, the Fifth Circuit criminal cases addressing spoliation have examined whether the defendants proved bad faith and were therefore entitled to an adverse-inference instruction.  *See Valas*, 822 F.3d at 239; *United States v. Livingston*, 243 F. App'x 37, 38 (5th Cir. 2007); *United States v. Fasono*, No. 06-60406, 2007 WL 505265, at *1 (5th Cir. Feb. 13, 2007); *United States v. Ochoa*, 88 F. App'x 40, 42 (5th Cir. 2004); *Wise*, 221 F.3d at 156–57.  It is conceivable that Randall might develop enough evidence at trial to show that the Government destroyed evidence in bad faith.  If so, he can seek an adverse-inference instruction.  But for the reasons that follow, he has not yet made that showing and is not now entitled to sanctions—including dismissal.

  A.  Whether Government Controlled and Destroyed Evidence

Randall's spoliation allegations may be split into two broad categories:  evidence that the IRS failed to obtain and evidence that he says was known to have existed but was not turned over.  Notably, there is no evidence that the Government actually obtained and then destroyed evidence in bad faith.

The Court first turns to evidence the IRS allegedly should have collected, as that consumes most of Randall's briefing.  Randall says that, upon summoning, interviewing, and investigating his tax preparer Lynn Floyd, IRS "agents *should* have found six months of communications, emails, and work papers" concerning Randall's tax returns on her computer but that the Government has not produced any such evidence.  Def.'s Mem. [51] ¶ 8 (emphasis added).  He premises the purported existence of this evidence "upon documents produced by the government, documents that Defendant Randall and his tax counsel have been able to find or

3

reconstruct, and reasonable inference arising from the information available in documents, pleadings, and attendant circumstances." *Id.* ¶ 3 n.1.

But even accepting this speculative assertion that evidence existed, Randall's argument is of no moment without proof that the Government or IRS ever obtained and then destroyed it. Randall simply avers the IRS *should have* collected it under IRS regulations, not that it did. And the Government says it has "never received the computer or otherwise possessed the information in question." Gov't's Resp. [52] at 6. In fact, the Government claims that once it requested Floyd's computer, it learned that the computer had crashed, *id.* at 4, but it nevertheless produced a forensic image of the hard drive Floyd eventually turned over, *id.* at 2.

Further, Randall provides no basis for the Court to hold that the failure to obtain certain evidence during an investigation is spoliation. Indeed, the opposite is true. In *Wise*, the court faced a similar issue. Like Randall, the *Wise* defendant argued that the Government failed in its duty to seize a computer, thus depriving him of necessary evidence when the computer subsequently crashed. 221 F.3d at 156. The Fifth Circuit affirmed the denial of an adverse-inference instruction because "the government did not destroy [the] computer; in fact, the computer was not even in the government's custody." *Id.* at 156−57 (noting lack of bad faith). This applies equally to Randall's argument that the IRS failed to conduct certain interviews and inquiries. *See* Def.'s Mem. [51] ¶ 9. The jury may certainly consider evidence of an insufficient investigation at trial, but spoliation sanctions are not warranted as to evidence the Government never controlled.[2]

---

[2] Randall also argues that dismissal is warranted because the Government failed to preserve electronic evidence under Federal Rule of Civil Procedure 37(e). *See* Def.'s Mem. [51] at 11. Even assuming Civil Rule 37(e) provides some persuasive authority, the rule itself applies when a party has notice of the need to preserve its own electronically stored information but then

As to the second category, Randall makes two allegations of specific evidence he believes existed but that the Government failed to produce. First, he asserts that the Government's production of Floyd's work papers omitted a sticky note reading, "There are mistakes I caught while putting in the QB's." *Id.* ¶ 15 (citing Ex. L [51-12]). Randall caught this omission because this "same" document, along with the sticky note, was produced in his own discovery. Thus, he says, the Court could infer based on circumstantial evidence that the sticky note existed. But there is nothing to suggest this note was ever under Government control or that it was destroyed, and Randall fails to explain the significance of the evidence, which is apparently still in his possession. The Court will not impose sanctions on this basis.

Finally, the Court addresses the ominous "phantom return." Def.'s Reply [46] ¶ 10; Def.'s Mem. [51] ¶ 8; Def.'s Reply [54] ¶ 6. Based on his filings, the Court interprets this repeated reference to represent the original 2008 return Floyd allegedly prepared before Randall instructed her to "change" it to include false and fraudulent deductions. Def.'s Mem. [51] ¶ 1 (citing Indictment [1] ¶ 6). According to Randall, "his counsel has been told that it does not exist and was not preserved," but he argues that this is untrue because the Government referenced it in the indictment. *Id.* ¶ 8, 10. While inclusion in the indictment may circumstantially show the original return existed at some point, it does not show the Government ever had control of and destroyed it. As noted, the Government asserts that Floyd's computer crashed prior to the 2011 IRS audit, and thus it never possessed the requested evidence. Gov't's Resp. [52] at 2, 6. Here again, Randall may examine witnesses at trial regarding this alleged crash. But he currently

---

fails to do so. *See* Fed. R. Civ. P. 37(e). The rule does not require a party to first obtain and then preserve the evidence.

offers no evidence suggesting the "phantom return" was under the Government's control and that it was destroyed.[3]

B. No Showing of Bad Faith

Even if Randall's allegations regarding the evidence at issue were sufficient, he fails to show the Government or IRS acted in bad faith. *See United States v. Prater*, No. 5:10-CR-14-DCB-FKB, 2011 WL 824475, at *2 (S.D. Miss. Mar. 2, 2011) ("As indicated by the definition's inclusion of the word intentional, a finding of spoliation requires evidence of bad faith."). "Bad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence." *Guzman*, 804 F.3d at 713.

Here, Randall asserts that "the [IRS] agents' failure to follow the IRS's written procedures over the course of years of investigation resulted in the loss of critical evidence [and] presumptively constitute[s] bad faith." Def.'s Mem. [51] ¶ 20. But there is no evidence to suggest the Government or IRS acted with the intent of destroying or hiding any evidence. Instead, Randall speculates that "the existence and extent of bad faith *can be determined only* upon revelation of facts and circumstances explaining why the electronic data was not acquired, when it became available, and the extent of responsibility shared between government witness Floyd and the agents and supervisors of the IRS." *Id.* at 13 (emphasis added). Even assuming the failure to obtain evidence is the same as destroying it in bad faith, the argument lacks

---

[3] Randall cites a 1957 case from the District of Hawaii to support his plea for dismissal, arguing that dismissal is warranted when the Government is "unable to produce documents known to have existed." Def.'s Mem. [51] ¶ 21 (citing *United States v. Heath*, 147 F. Supp. 877 (D. Haw. 1957)). But *United States v. Heath* involved a very different circumstance. There, the defendant actually produced crucial evidence to the Government, but the Government lost it. Under those circumstances, the court dismissed the indictment. *Heath*, 147 F.Supp. at 879. Here, Randall has not shown that the Government lost or destroyed anything under its control.

evidentiary support. Hence, Randall has not shown bad faith, and this Court will not impose sanctions for spoliation.[4]

C. Due Process

Randall utilizes his memorandum and reply brief to assert a due-process argument not included in his initial motion. This shift requires the Court to conduct a separate analysis. *See Prater*, 2011 WL 824475 (analyzing spoliation and due process separately). According to Randall, "[f]ederal agencies and agents must substantially comply with the written rules, regulations, policies, and procedures governing the investigation of suspected tax crimes." Def.'s Mem. [51] ¶ 17 (citing *United States v. Matthews*, 464 F.2d 1268, 1269–70 (5th Cir. 1972); *United States v. Leahey*, 434 F.2d 7, 11 (1st Cir. 1970); *United States v. Heffner*, 420 F.2d 809, 811 (4th Cir. 1969); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 263 (1954)). He then claims that when the IRS fails to do so, the "courts will strike it down." *Id.* ¶ 18 (quoting *Heffner*, 420 F.2d at 811). Randall's argument is unpersuasive for four reasons.

First, all of Randall's authority pre-dates *United States v. Caceres*, where the Supreme Court refused to adopt a rigid rule requiring suppression of evidence obtained in violation of agency regulations. 440 U.S. 741, 752−55 (1979). The *Caceres* Court concluded that a rule like the one Randall proposes would chill helpful agency policymaking, so it determined instead that these issues must be decided on a case-by-case basis. *Id.* at 756.

Second, *Caceres* considered "whether evidence obtained in violation of [IRS] regulations may be admitted at the criminal trial." *Id.* at 743. The same was true in the cases Randall cited,

---

[4] Randall also appears to suggest that the IRS's decision to charge him criminally rather than pursue the issue in civil proceedings evidences bad faith. Def.'s Mot. [34] ¶¶ 11–13. But those allegations are unrelated to the evidentiary issues presented by this motion. Moreover, he cites no authority suggesting that the decision to charge a defendant criminally reflects bad faith when the grand jury has returned an indictment.

none of which considered dismissal as a sanction for failing to follow regulations. *See, e.g.*, *Matthews*, 464 F.2d at 1269. Such a drastic sanction is unwarranted here on this basis alone.

Third, the cases Randall cites deal with evidence *obtained* in violation of IRS regulations as opposed to evidence the Government *would have obtained* had it followed policy. *See id.* (taking statement without giving *Miranda*-type instructions required by IRS regulations); *Leahey*, 434 F.2d at 8 (taking statement without "warning [defendant] that they were investigating the possibility of criminal tax fraud"); *Heffner*, 420 F.2d at 810 (taking statement without giving *Miranda*-type instructions required by IRS regulations). The result might be different if the disputed regulations invoked a constitutional right, or if Randall had relied on the regulations to the extent that his due-process rights were implicated. *See Caceres*, 440 U.S. at 752–53. But here, Randall is merely claiming that the IRS agents failed to follow regulations that would have generated a more thorough investigation and that had they done so, "they would have realized" that Floyd—not Randall—was the problem. Def.'s Mem. [51] ¶ 9. Randall cites no authority suggesting that an incomplete investigation is grounds for dismissal or evidence suppression.

Finally, even assuming Randall had shown that the Government obtained and then failed to preserve evidence, the "[f]ailure to preserve *material exculpatory* evidence violates due process rights irrespective of whether the government acted in good or bad faith. However, failure to preserve *merely potentially useful* evidence does not constitute a denial of due process absent a showing of bad faith." *United States v. McNealy*, 625 F.3d 858, 868 (5th Cir. 2010) (emphasis added) (footnotes omitted) (citing *Illinois v. Fisher*, 540 U.S. 544, 547 (2004); *Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988)).

Here, Randall fails to point to any specific exculpatory evidence, relying instead on speculative generalizations.  *See, e.g.*, Def.'s Mem. [51] at 13 ("[Randall] has been deprived of critical information and documents that *could have* provided impeachment of testimony of both Floyd and agent and corroborated Randall's explanation of no participation in Floyd's crime.") (emphasis added); *id.* ¶ 19 ("The missing materials in this case are inextricably tied with the question of Randall's innocence.").  So the allegedly unproduced evidence is, at most, potentially useful, and thus its alleged destruction is not a due-process violation unless the IRS or Government acted in bad faith.  As discussed *supra*, Randall presumptively alleges that the IRS acted in bad faith by violating its guidelines in obtaining evidence.  But there is no poof that this was intentional, and mere negligence is insufficient to trigger a due-process violation.  *See Gentry v. Johnson*, 95 F.3d 1149 (5th Cir. 1996).  Randall fails to show bad faith here.

III.    Conclusion

The Court has considered all the arguments raised.  Those not specifically addressed do not change the outcome.  For the foregoing reasons, Randall's Motion to Dismiss or, Alternatively, in Limine [34] is denied.  As previously noted, the Court will explore the status of discovery during the upcoming pretrial conference to ensure that Randall has received all he is due.

**SO ORDERED AND ADJUDGED** this the 22nd day of March, 2017.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE